Shirley **CHERRY** and Husband, Chester C. Cherry, Jr., Appellants,

v.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**, Appellee.

No. 06–98–00015–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 13, 1998.

Decided Aug. 25, 1998.

Charles Attaway, Texarkana, for appellant.

Richard D. Naylor, Assistant Attorney General, Austin, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Shirley Cherry, joined by her husband, Chester C. Cherry, Jr., brought suit against the Texas Department of Criminal Justice (TDCJ) for damages arising from a kidnapping and assault committed by an escaped prisoner. The trial court granted summary judgment in favor of the TDCJ on the basis of sovereign immunity. We affirm the summary judgment.

Clifton Brumley was incarcerated at the Telford Unit at New Boston. All prisoners were classified and assigned a status depending on their backgrounds. A prisoner's status determined the degree of supervision to which he would be subjected. Because of his background, Brumley should have been assigned a restricted status, but because a TDCJ employee failed to enter Brumley's restricted classification into the department's computer system, Brumley was allowed to go beyond the immediate confines of the prison buildings without supervision. Brumley was allowed access to a farm tractor, which he could ride over the prison grounds without supervision. Had the TDCJ known of Brumley's correct status, he would not have been permitted to operate a tractor or to go unsupervised. The TDCJ had placed a telephone, which could be used to make calls to the outside, in a shop office on the prison grounds. Brumley had access to various tools he could use to gain access to the shop. Brumley used the telephone to make an outside call to a confederate, who helped him escape. The day after Brumley used the shop telephone, he escaped from the TDCJ by driving a tractor to a secluded area of the prison. He then made his way to Texarkana and approached Cherry. He kidnapped Cherry at gunpoint, stole her car, and forced her to accompany him in the car to Tyler, Texas, where he robbed a financial institution. During some of the time Brumley held Cherry hostage, he placed a pistol to her forehead and threatened to kill her.

Cherry contends that the trial court erred in granting the TDCJ's motion for summary judgment on the ground of sovereign immunity. She contends that her claims come within the Texas Tort Claims Act's waiver of immunity because her injuries were caused by the use or condition of tangible personal and real property.

 Our review of the trial court's rendition of summary judgment is de novo. *Toonen v. United Servs. Auto. Ass'n,* 935 S.W.2d 937, 942 (Tex.App.-San Antonio 1996, no writ). The question on appeal, as well as in the trial court, is whether the TDCJ established by competent summary judgment evi-

dence that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970); *Stevens v. State Farm Fire and Cas. Co.,* 929 S.W.2d 665, 669 (Tex.App.-Texarkana 1996, writ denied). The TDCJ has the burden, and we must resolve all doubts against it. *Roskey v. Texas Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex.1982); *Stevens v. State Farm Fire and Cas. Co.,* 929 S.W.2d at 669. A defendant moving for summary judgment must disprove at least one element of each theory pleaded by the plaintiff, or conclusively prove by summary judgment evidence each essential element of an affirmative defense. *See Hanssen v. Our Redeemer Lutheran Church,* 938 S.W.2d 85, 90 (Tex.App.-Dallas 1996, writ denied); *Vest v. Gulf Ins. Co.,* 809 S.W.2d 531, 533 (Tex. App.-Dallas 1991, writ denied); *see generally,* Dean M. Swanda, *Summary Judgment Practice,* 46 Baylor L. Rev. 721, 725 (1994). Sovereign immunity is an affirmative defense that may support a summary judgment. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *Harris County v. Louvier,* 956 S.W.2d 106, 107 (Tex.App.-Houston [14th Dist.] 1997, n.w.h.).

■ TDCJ moved for summary judgment, claiming the affirmative defense of sovereign immunity, otherwise called governmental immunity. Sovereign immunity derives from English common law and was created to protect the king, his officers, and his servants from liability for tortious conduct. *Harris County v. Dowlearn,* 489 S.W.2d 140, 143 (Tex.Civ.App.-Houston [14th Dist.] 1972, writ ref'd n.r.e.). Today, it serves the same purpose of protecting the government and its agencies from liability for tortious conduct, and it applies in all cases except in those where it has been explicitly waived by statute. *Director of Dep't of Agric. and Env't v. Printing Indus. Ass'n of Texas,* 600 S.W.2d 264, 265–66 (Tex.1980); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976).

The Texas Tort Claims Act waives sovereign immunity in certain limited areas. One of the areas where the state may be liable for torts is where personal injuries are "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1997).

Cherry asserts that her claims come within this specific waiver because erroneous information entered in the TDCJ's computer resulted in Brumley's improper classification that allowed him only limited supervision; because Brumley was allowed to roam unsupervised; and because he used an unsupervised telephone to facilitate his escape.

■ We will first address the claim that the TDCJ negligently classified Brumley in the computer system, and this proximately caused Cherry's injuries. Cherry claims that an employee of the TDCJ negligently misclassified Brumley in the computer system, resulting in his being allowed to have unsupervised access to remote portions of the prison complex, which in turn allowed him to escape. In dealing with whether information and records are tangible property, the Supreme Court has stated:

> While the paper on which doctors and nurses may record information about a patient's condition is tangible in that paper can be seen and touched, information itself is an abstract concept, lacking corporeal, physical, or palpable qualities. Information thus, is intangible; the fact that information is recorded in writing does not render the information tangible property.

*University of Texas Med. Branch at Galveston v. York,* 871 S.W.2d 175, 178–79 (Tex. 1994); *see Clawson v. Wharton County,* 941 S.W.2d 267, 271 (Tex.App.-Corpus Christi 1996, writ denied); *Marroquin v. Life Management Ctr. for MH/HR Servs.,* 927 S.W.2d 228, 230 (Tex.App.-El Paso 1996, writ dism'd w.o.j.); *Harrison v. Texas Bd. of Pardons and Paroles,* 895 S.W.2d 807 (Tex.App.-Texarkana 1995, writ denied); *Vincent v. West Texas State Univ.,* 895 S.W.2d 469, 472–73 (Tex.App.-Amarillo 1995, no writ); *Texas Dep't of Human Servs. v. Benson,* 893 S.W.2d 236 (Tex.App.-Austin 1995, writ denied). A governmental unit does not waive

its immunity by "using, misusing, or not using information." *Kassen v. Hatley*, 887 S.W.2d 4 (Tex.1994). The use of computers, telephones, or records to collect and communicate information is not a use of tangible personal property. *Thomas v. Brown*, 927 S.W.2d 122 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Dear v. City of Irving*, 902 S.W.2d 731 (Tex.App.-Austin 1995, writ denied).

One court of appeals has recently ruled that a vehicle identification number of a car was information and a city did not waive its immunity by placing the number in the wrong category in a computer. *Martinez v. City of Abilene*, 963 S.W.2d 559, 560 (Tex. App.-Eastland 1998, n.w.h.). Also, in *Texas Youth Comm'n v. Ryan*, 889 S.W.2d 340, 341 (Tex.App.-Houston [14th Dist.] 1994, no writ), a juvenile was released due to written diagnostic tools. The court held that the information in diagnostic test evaluation forms for placement and discipline purposes does not constitute the use of tangible personal property under the Act. *Id.* at 345. Consequently, the misclassification of Brumley in the computer does not constitute the use of tangible personal property.

The next issue is whether Brumley's use of the telephone to facilitate his escape, or his use of tools to break into the shop to use the telephone, or his use of the tractor brings Cherry's claims within the waiver of immunity. We should reiterate that Cherry must allege facts showing that a TDCJ's employee's negligence was the proximate cause of her injuries and that the negligent conduct involved the use or condition of tangible personal property. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 33 (Tex.1983); *McBride v. TDCJ–ID*, 964 S.W.2d 18 (Tex.App.-Tyler 1997, n.w.h.); *Washington v. City of Houston*, 874 S.W.2d 791, 795 (Tex.App.-Texarkana 1994, no writ).

Cherry's response to the motion for summary judgment did raise a fact issue as to whether a TDCJ employee was negligent. Cherry alleged facts that the telephone was improperly secured in a location where an inmate could have unrestricted access to the telephone with no supervision. Further, she alleged that the warden of the prison knew of the security risk posed by the telephone. Certainly, the tractor, the tools, and the telephone are tangible personal property because they are corporeal, concrete, and palpable. *See University of Texas Med. Branch at Galveston v. York*, 871 S.W.2d at 178; *Texas Dep't of Corrections v. Winters*, 765 S.W.2d 531, 532 (Tex.App.-Beaumont 1989, writ denied). It is not sufficient, however, that tangible personal or real property be used; it must cause the plaintiff's injuries.

We begin with Cherry's contention that there is a fact question as to the causal connection between the TDCJ's use of tangible personal property and her injuries. The TDCJ's computer misclassification of Brumley does not constitute use of tangible personal property under the Act. *See University of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175; *Texas Youth Comm'n v. Ryan*, 889 S.W.2d 340. We must therefore determine whether the use of the telephone and tractor proximately caused Cherry's injuries.

▮ Proximate cause is generally a mixed question of law and fact for the jury to determine. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 314 (Tex.1987). A lack of proximate cause may be established as a matter of law where the circumstances are such that reasonable minds could not arrive at a different conclusion. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d at 471; *Ely v. General Motors Corp.*, 927 S.W.2d 774, 781 (Tex.App.-Texarkana 1996, writ denied). Proximate cause has two elements: cause in fact and foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995).

Cherry argues that cause in fact exists because the TDCJ's negligent use of tangible personal property was a substantial factor in bringing about Brumley's escape and the subsequent kidnapping and injuries, without which those injuries would not have occurred. She contends that foreseeability is present because the TDCJ should have anticipated the dangers that its conduct created for others.

Cherry cites *Finnigan v. Blanco County*, 670 S.W.2d 313 (Tex.App.-Austin 1984, no writ). In *Finnigan*, the plaintiff alleged that

a deputy was negligent in leaving a car running in front of a jail, thereby facilitating a prisoner's escape and contributing to an immediate subsequent collision that resulted in the plaintiff's wife's death. The court found sufficient evidence to raise a fact question as to proximate cause. *Id.* at 317.

Cherry also relies on the Supreme Court's decision in *Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30 (Tex.1983), to support her position that the use of the property need not be the instrumentality of harm but, instead, the property need only be involved. *Id.* at 33. The Supreme Court recently clarified its holding in *Salcedo* in *Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339 (Tex.1998). That case involved a mental patient, Bossley, who was involuntarily committed to a mental health facility. Physicians at the facility knew of the possibility that Bossley might try to leave the facility or attempt suicide, but they took no extraordinary precautions to prevent either of those possibilities. *Id.* at 340. Bossley left the facility when an employee left a door open just inside the front door of the facility. When found and approached by the police and mental facility staff, Bossley leaped into the path of a truck and was killed. The plaintiffs claimed that immunity was waived because Bossley's death was caused by the use of property-the employee's unlocking the outer door without looking for Bossley-and a condition of property-the unlocked inner door. *Id.* at 343.

The Supreme Court rejected the argument in *Bossley* that some involvement of property is all that is required for immunity to be waived under Section 101.021(2). The Supreme Court stated that causation requires more than mere involvement. "Property does not cause injury if it does no more than furnish the condition that makes the injury possible. The unlocked doors permitted [Bossley's] escape but did not cause his death." *Id.* at 343 (citation omitted). The court also noted that Bossley's death was distant geographically, temporally, and causally from the open doors at the facility. *Id.* at 343.

 Summary judgment proof in this case established that Brumley escaped dur-

ing the afternoon on January 20, 1996. Cherry was abducted in the early morning hours of January 22, 1996, more than thirty-six hours after Brumley's escape and more than thirty miles from the prison.

The telephone and tractor Brumley used assisted him in making his escape, but they did not cause the harm suffered by Cherry. As in *Bossley,* Brumley's access to and use of the property was too attenuated "geographically, temporally, and causally" from Cherry's abduction to have caused it. *See id.* at 343.

For the reasons stated, we affirm the judgment.