Affirmed In Part, Reversed and Remanded In Part, and Opinion filed June
29, 2006








Affirmed In Part, Reversed and Remanded In Part, and
Opinion filed June 29, 2006.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-04-00686-CV

_______________

 

JOHN COATS AND SHAHIN COATS, Appellants

 

V.

 

FARMERS INSURANCE EXCHANGE, Appellee

                                                                                                                                               


On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 02‑65428

                                                                                                                                               


 

O P I N I
O N

In this
case of first impression, appellants, John and Shahin Coats,  appeal a summary
judgment in favor of appellee, Farmers Insurance Exchange, contending the trial
court erred (1) by granting summary judgment because the homeowner=s insurance policy in question is
either ambiguous or Farmers expressly agreed to remit an amount not to exceed
policy limits for each loss sustained during the policy period; and (2) by
concluding that appellants= claims under former Article 21.55 of the Texas Insurance
Code fail as a matter of law.  We affirm in part and reverse and remand in
part.








Background

Farmers
issued a homeowner=s insurance policy to appellants on July 30, 2000.  The
policy was effective from July 30, 2000 to July 30, 2001, and the policy limits
were $138,000 for damage to the dwelling, $82,800 for loss to contents within
the dwelling, and $27,600 for loss of use including alternative living expenses
(ALE).  On or about April 18, 2001, appellants filed an insurance claim for
hail and water damage to their roof.  By letter dated May 9, 2001, Farmers
informed appellants that the costs to repair the damage did not exceed the
$1,000 policy deductible.  On June 14, 2001, appellants filed another claim for
water and roof damage to their home that occurred as a result of Tropical Storm
Allison.  After first issuing a denial, Farmers re-opened the claim and
discovered several water sources had caused damage to the home.  Among those
sources were a leak in the air-conditioning and heating system (HVAC), several
leaks in the roof, and a hot tub leak.  During March 2002, Farmers determined
appellants= residence was a total loss and paid the policy limits of $138,000 for
the dwelling and $27,600 for ALE.  Farmers paid $37,671.69 under the contents
coverage.  During July 2002, appellants filed another claim in which they
alleged an HVAC overflow had caused water and mold damage to the dwelling. 
Farmers investigated the claim and determined the damage allegedly caused by
HVAC overflow was considered when appellants received the policy limits. 








During
December 2002, appellants sued Farmers for nonpayment of the subsequent HVAC
claim.  Appellants pursued causes of action for breach of contract, negligence,
gross negligence, violations of the Texas Deceptive Trade Practices Act,
violations of articles 21.21 and 21.55 of the Texas Insurance Code, and breach
of the duty of good faith and fair dealing.  Farmers filed a motion for summary
judgment contending there were no genuine issues of material fact because
Farmers paid appellants the policy limits.  Appellants responded that they are
entitled to receive a sum not to exceed policy limits for each source of
damage.  Appellants seek reversal of the trial court=s order granting summary judgment in
favor of Farmers.

Standard of Review

Under the
traditional standard for summary judgment, the movant has the burden to prove
there is no genuine issue of material fact and  judgment should be granted as a
matter of law.  Tex. R. Civ. P.
166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999).  In reviewing a grant of summary judgment, we take
as true all evidence favorable to the nonmovant and consider all reasonable
inferences in the nonmovant=s favor.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 549 (Tex. 1985).  Interpretation or construction of an unambiguous written
instrument is a matter of law to be determined by the trial court.  Phillips
v. Union Bankers Ins. Co., 812 S.W.2d 616, 617B18 (Tex. App.CDallas 1991, no writ).  When the
controversy can be resolved by proper construction of an unambiguous document,
rendition of summary judgment is appropriate.  Moody v. Moody Nat=l Bank, 522 S.W.2d 710, 715 (Tex. Civ. App.CHouston [14th Dist.] 1975, writ ref=d n.r.e.).








Insurance
policies are subject to the same rules of construction as other contracts.  Nat=l Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995). 
The primary concern of the court is to ascertain the true intent of the parties
as expressed in the instrument.  Forbau v. Aetna Life Ins. Co., 876
S.W.2d 132, 133 (Tex. 1994).  If a written contract is so worded that it can be
given a definite or certain legal meaning, then it is not ambiguous.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  The simple fact that the
parties advance conflicting interpretations of the contract does not make it
ambiguous.  Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980
S.W.2d 462, 465 (Tex. 1998).  If an insurance contract is subject to more than
one reasonable interpretation, the contract is ambiguous and the interpretation
that most favors coverage for the insured will be adopted.  Grain Dealers
Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997).  When interpreting
an insurance policy, a court should not isolate a single phrase, sentence, or
section and consider it separately from other provisions.  State Farm Life
Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995).

Limit of Liability

The
policy form under consideration is a standard Homeowners Form B, which is
prescribed by the Texas Department of Insurance.  Appellants contend the phrase
Aany one loss@ that appears under the first
sub-heading of ASECTION 1-CONDITIONS@ entitled AInsurable Interest and Limit of Liability@ creates an ambiguity or expressly requires Farmers to
remit an amount not to exceed the declared limit of liability for each loss
sustained during the policy period.  Appellants also argue that omission of
reinstatement clauses for losses caused by perils other than fire supports
their contention that the policy is ambiguous or the carrier expressly agreed
to remit policy limits for each loss (other than fire) regardless of the number
of losses during the policy period.  Farmers contends there is no ambiguity
when the policy is read and interpreted as a whole and refers this court to
language under the fourth sub-heading of ASECTION 1-CONDITIONS@ entitled ALoss Settlement.@  The language in both sub-headings
is set forth verbatim for consideration in context:

1.
Insurable Interest and Limit of Liability.  Even if more than one person has an insurable interest in the
property covered, we will not be liable in any one loss:

a.  to the
insured for more than the amount of the insured=s interest at the time of the loss; or

b.  for
more than the applicable limit of liability.

Each time
there is a loss to any building insured under Coverage A (Dwelling), the amount
of insurance applicable to that building for loss by fire will be reduced by
the amount of the loss.  As repairs are made, the amount of insurance will be
reinstated up to the limit of liability shown on the declarations page.








4. Loss Settlement.  Covered property losses are settled as follows:

* * * * *

We
will pay only the actual cash value of the damaged building structure(s) until
repair or replacement is completed.  Repair or replacement must be completed
within 365 days after loss unless you request in writing that this time limit
be extended for an additional 180 days.  Upon completion of repairs or
replacement, we will pay the additional amount claimed under replacement cost
coverage, but our payment will not exceed the smallest of the following:

(1) 
the limit of liability under this policy applicable to the damaged or
destroyed building structure(s);

(2) 
the cost to repair or replace that part of the building structure(s) damaged,
with material of like kind and quality and for the same use and occupancy on
the same premises; or

(3)  the amount actually and
necessarily spent to repair or replace the damaged building structure(s).

(Emphasis added).     

Following the rules of construction,
we consider the contract as a whole and read all of the provisions together. 
Accordingly, we must consider the ALoss Settlement@ provisions in conjunction with the AInsurable Interest and Limit of
Liability@ provisions.  We attempt to find harmony in the contract, notwithstanding
appellants= proposed interpretation of the phrase Aany one loss.@








The
state courts of Texas have not previously decided this issue; however,
appellants refer this court to authority from a sister state wherein the court
concluded that the subject phrase creates an ambiguity because the insurance
carrier did not include specific language limiting payment to the declared
amount regardless of the number of claims made during the policy period.  O=Bryan v. Columbia Ins. Group, 56 P.3d. 789 (Kan. 2002).  Reading
the policy as a whole, we reject the notion that omission of such language
creates an ambiguity.  See Beaston, 907 S.W.2d at 433.  Generally,
insurable interest clauses describe who will be entitled to receive payments if
more than one insured person or corporation has equitable or legal title to the
insured property.  When considered in context of the heading and language that
follows, the phrase Aany one loss@ refers to a scenario where two or
more insured persons or corporations are disputing allocation of loss payments.
In other words, Farmers will be required to pay an amount not to exceed the
applicable limit of liability to be allocated between the insureds as their
interests appear.  Accordingly, we find no ambiguity in the policy provisions
under consideration.

The
general rule relative to payment of the limit of liability is that policy
proceeds should be applied to indemnify the insured up to the amount of the
policy, fulfilling the objective that the insured should neither reap economic
gain, nor incur a loss, if adequately insured.  Vest v. Gulf Ins. Co.,
809 S.W.2d 531, 534 (Tex. App.CDallas 1991, writ denied).  The policy unambiguously entitled
appellants to the smaller of two amounts:  either (1) the limit of liability,
or (2) the cost to repair or replace the home.  It is undisputed that Farmers
paid the limit of liability; therefore, Farmers fulfilled its contractual
obligation by paying the declared limit of liability.[1] 
Appellants= first issue is overruled.

INSURANCE
CODE VIOLATION 








In their
second issue, appellants contend the trial court erred by rendering summary
judgment for Farmers on the appellants= claims under article 21.55 of the
Texas Insurance Code.  We note that appellants agree their other insurance code
claims fail as a matter of law if the declared policy limits are applied on a
per policy rather than a per claim basis.  They argue, however, that Farmers
violated article 21.55 when it delayed the payment it did make to appellants
under the policy.  Former article 21.55, section 6, of the Texas Insurance Code
prescribed penalties if the insurer unreasonably delays payment of a valid
claim.  Act of May 27, 1991, 72nd Leg., R.S., ch. 242, ' 11.3, 1991 Tex. Gen. Laws 939, 1043B1045 (repealed and recodified 2003)
(current version at Tex. Ins. Code Ann.
'' 542.051B .061 (Vernon Supp. 2005)).[2] 


Farmers
argues appellants waived this issue by not urging it in their response to the
motion for summary judgment.  Farmers moved for summary judgment on appellants= article 21.55 claims.  However,
appellants can challenge the trial court=s summary judgment based on Farmers= alleged failure to prove there is no
genuine issue of material fact without having expressly asserted this argument
in response to Farmers= traditional motion for summary judgment. City of Houston
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678B79 (Tex. 1979).  Because appellants
contend the trial court erred in denying their article 21.55 claim as a matter
of law, we interpret appellants= second issue as an attack on the legal sufficiency of
Farmers= summary judgment proof on this
ground.  See D.M. Diamond Corp. v. Dunbar Armored, Inc., 124 S.W.3d 655,
659 (Tex. App.CHouston [14th Dist.] 2003, no pet.). 

Appellants
made the original claim in April 2001.  Farmers did not make partial payment
until March 2002, almost a year later.  Article 21.55 requires the insurer to
notify a claimant in writing of the acceptance or rejection of a claim not
later than the fifteenth business day after the date the insurer receives all
items necessary to secure final proof of loss.  Tex. Ins. Code Ann. art.
21.55 ' 6.  If an insurer, after receiving all
items necessary to secure proof of loss, delays payment beyond the period of
time specified by applicable statutes, or if the statutes do not specify a
period, delays payment for more than sixty days, the insurer is required to pay
an eighteen percent penalty on the amount due plus attorney=s fees.  Tex. Ins. Code Ann. art.
21.55 ' 6.








A
defendant moving for summary judgment has the burden of proving there is no
material issue of fact relative to the plaintiff=s cause of action.  Doe v. Boys
Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 476B77 (Tex. 1995).  Regarding
traditional motions, the burden of introducing evidence to avoid summary
judgment shifts to the non-movant only if the movant=s evidence meets the criteria under
Texas Rule of Civil Procedure 166a(c) and negates all genuine issues of
material fact with respect to an essential element of the non-movant=s cause of action.  White v. Wah,
789 S.W.2d 312, 315 (Tex. App. CHouston [1st Dist.] 1990, no writ).  Appellants assert that
they filed a claim in April 2001, which Farmers did not pay until March 2002. 
To successfully maintain a claim under article 21.55, section 6, a party must
establish three elements: (1) a claim under an insurance policy; (2) the
insurer is liable for the claim; and (3) the insurer has failed to follow one
or more provisions of article 21.55 with respect to the claim.  Allstate
Ins. Co. v. Bonner, 51 S.W.3d 289, 291 (Tex. 2001). Considering the three
claimed dates of loss or sources of loss, we hold Farmers failed to present
conclusive proof refuting appellants= article 21.55 claims.  Because the
trial court erred in rendering summary judgment on these claims, appellants= second issue is sustained.

Accordingly,
we reverse that portion of the trial court=s order granting summary judgment in
favor of Farmers on appellants= claims under former article 21.55 of the Insurance Code, and
remand for proceedings consistent with this opinion.  In all other respects,
the judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed
June 29, 2006.

Panel consists of Justices Hudson,
Frost, and Seymore.









[1]  Three federal district courts, applying Texas law,
have interpreted identical language in insurance policies under identical
challenges from homeowners.  Each court found the limit of liability was
absolute. Maricle v. State Farm Lloyds, No. CA-C-03-386H, 2004 WL
1224632 (S.D. Tex. May 21, 2004); Ramirez v. State Farm Lloyds, No.
CA-C-02-359-H , 2004 WL 612862 (S.D. Tex. Jan. 27, 2004); Moore v. State
Farm Lloyds, No. A-02-CA-591-SS, 2003 WL 23391420 (W.D. Tex. Apr. 1,
2003).  Although we are not bound by the decisions in those courts, we find
their reasoning persuasive.





[2]  Article 21.55 was repealed and recodified effective
April 1, 2005.  However, the former article 21.55 is applicable to this case. 
We will hereafter refer to the pertinent sections as they were previously
codified.